*Sawyer*
*v.*
*Baldwin.*

---

## RICHARD MARTIN *versus* THE FISHING INSURANCE COMPANY.

In a policy of insurance on a vessel engaged in the coasting trade, it was stipulated that the insurance company were not to be " liable for any damage to or from her sheathing." It was *held*, that if this was to be considered as a representation that the vessel was sheathed, it was immaterial, there being evidence that sheathing was not considered of advantage to a vessel employed in such trade ; and that it was not a warranty that she was sheathed.

A vessel was insured " at and from Calais, Maine, on the 16th day of July, at noon, to, at and from all ports and places to which she may proceed in the coasting business, for six months." It was *held*, that the policy attached, although there was no evidence that the vessel was at or prosecuting her voyage from Calais on the day named, it appearing that, when the policy was made, neither party knew when the vessel sailed from Calais, and that it was their intent to insure on time, without regard to the place where the vessel might be.

In an action upon a policy of insurance on a vessel, no evidence was offered of any preliminary proof being exhibited to the insurers before the action was brought, except an abandonment, a demand of payment, and an agreement of the parties to refer the case to arbitrators ; but it appeared, that the insurers had always refused payment, on the ground of the unseaworthiness of the vessel, and not on account of the want of further preliminary proof. It was *held*, that the insurers had thereby waived their right to any further preliminary proof, or that it might be presumed that they had had such proof.

If a vessel is seaworthy when the policy attaches, it will be presumed that she continues so during the time of the risk, in the absence of any evidence rebutting such presumption.

The plaintiff and L. bought a vessel together, and the plaintiff endorsed the notes given by L. for his proportion ; but no writing passed between the parties, at that time, in the nature of a mortgage or otherwise. The plaintiff was thereupon insured upon such vessel, for whom it concerned, to the amount of her value, the policy being made payable to him ; and before a loss occurred, L.

executed a bill of sale of his proportion, to the plaintiff. It was *held*, that the plaintiff thereby became entitled to recover the whole amount of a loss, for his own use.

ASSUMPSIT upon a policy of insurance, dated July 23, 1835, by which the defendants caused the plaintiff, for whom it concerned, to be assured, lost or not lost, in the sum of $2000, payable to him, " on the brig Helen, at and from Calais, Maine, on the 16th day of July, at noon, to, at and from all ports and places to which she may proceed in the coasting business for six months ending the 16th day of January 1836, at noon, (prohibiting all ports in North Carolina except Wilmington,) the company not to be liable for any damage to or from her sheathing, nor for partial loss under ten per cent." The vessel was valued at the sum of $2000, including the premium.

The plaintiff averred, that the policy was effected by him for the use and benefit of himself, for whom it might concern, payable to him in case of loss ; that he paid the premium ; and that he was, at the time when the policy was made and thence continually afterwards until the loss, interested in the vessel to the amount insured. It was also averred, that the vessel sailed from Calais on July 16, 1835, and was totally lost by the perils of the seas, on December 15, 1835.

The trial was before *Wilde* J.

It appeared from the evidence introduced by the plaintiff, that at the time when the policy was procured, the plaintiff and one Lamson were owners, each of a moiety, of the vessel.

Charles W. Cole testified, that he went with the plaintiff and Lamson to the office of the defendants ; that the plaintiff and Lamson stated that they had bought the vessel together, and the policy was made payable to the plaintiff, because Lamson had paid nothing for the vessel, and the plaintiff had endorsed Lamson's notes given for his moiety ; that the witness thought that this statement was made to the secretary of the insurance company, when the policy was executed, and that the president was there when it was finally concluded on ; and that the premium note was signed by the plaintiff alone It also appeared, that in the month of October following,

Lamson executed a bill of sale to the plaintiff of his moiety, and that Lamson had since deceased.

It was proved, that the vessel was not sheathed at the time of the loss ; and the defendants' counsel objected, that the plaintiff had not made out his case in this particular, the plaintiff, at the time when the insurance was made, having represented that she was sheathed, and the description of the vessel in the policy being a warranty, the fulfilment of which was essential to his right to recover. There was no evidence of any representation about the sheathing other than that contained in the policy. Upon this subject, Cole, who was a director in the office of the defendants, and who, at the request of the plaintiff, examined the vessel when in Boston, two or three weeks before the insurance was effected, testified, that at that time she was sheathed, though he did not think the sheathing was very good ; but it did not appear when and in what manner the sheathing was removed. There was evidence tending to prove, that sheathing was not considered of advantage to a vessel in the coasting trade.

There being no evidence showing that the vessel was at, or prosecuting a voyage from, Calais on the 16th of July, according to the terms of the policy, and the averment in the declaration, although it appeared, that she was at Calais after the policy was effected and before the loss, it was further objected by the defendants, that the plaintiff had not made out his case in this particular.

But the Court overruled both of these objections, and instructed the jury that it was not incumbent on the plaintiff to prove either of these facts.

It appeared, that some time in June 1835, the vessel was in Boston, and was then equipped with chain cables of sufficient length ; that she sailed from Calais in October, and arrived in New York, whence she sailed on December 13, 1835, bound for Boston ; that on the 15th of December, she was wrecked on Block Island, and came into Newport on the 24th ; and that soon after her arrival there, she had but forty-nine fathoms of chain cable, which was confessedly insufficient to render her seaworthy. It did not appear when the deficiency in the chain cable occurred, although there was evi-

dence tending to show, that there was a sufficient quantity when the vessel sailed from New York ; and the jury were instructed, that if the fact were proved, that the vessel was seaworthy when the policy attached and the risk commenced, the presumption was, that she continued seaworthy.

The plaintiff produced no evidence showing that any preliminary proof was exhibited to the defendants before the action was brought, excepting an abandonment which was not accepted, a demand of payment of the loss, and a written agreement for a reference of the case to arbitrators. But one of .the plaintiff's witnesses testified, that the defendants had always resisted the right of recovery on the ground of the unseaworthiness of the vessel, but that they had also, at the same time and frequently, told him that they wished the plaintiff to call and exhibit the papers, in order that they might settle the matter, which the plaintiff refused to do, saying that it was their place to call on him ; and that the defendants had said, that they would return the premium note and pay nothing, which was intended to be and was communicated to the plaintiff. There was no evidence, that the defendants, in their communications with the plaintiff, made the want of proof a ground of objection to the payment of the loss.

It was objected by the defendants, that this evidence was not sufficient, and that the plaintiff could not recover for a partial loss, or general average contribution, without having first presented the nature of the particulars or the amount of his claim. But the court overruled the objection, and instructed the jury, that the loss or injury to the vessel being notorious and not disputed, and the defendants having refused payment on the ground of the unseaworthiness of the vessel, it was for the jury to decide whether the defendants had not, upon the facts thus proved, waived their right to any other preliminary proof, or whether it was not evidence that they had had such proof.

The jury found a general verdict for the plaintiff.

If the rulings of the judge were incorrect, the verdict was to be set aside and a new trial granted ; but if they were correct, the case was to be referred to an assessor, to make up a statement of the loss on such principles as the Court should direct, and the verdict was to be amended conformably to the

report of the assessor, and judgment rendered thereon for the plaintiff.

*C. G. Loring*, *W. J. Hubbard* and *Watts*, for the defendants, to the point, that the clause in the policy declaring that the defendants were not to be liable for any damage to or from her sheathing, was a representation equivalent to a warranty, that the vessel was sheathed, cited 1 Phillips on Ins. 124 to 127 ; 2 Phillips on Ins. 123 ; *Reid* v. *Harvey,* 4 Dow, 97 ; that as the policy was on time, if the vessel was unseaworthy in respect to her chain cables, immediately after the loss occurred, the plaintiff was bound to prove that she was seaworthy in that respect, when she sailed from New York, 2 Phillips on Ins. 502 ; that the exhibition of the preliminary proofs, was a condition precedent to the right of recovery, *Columbian Ins. Co.* v. *Lawrence*, 2 Peters' Sup Court R. 25 ; and that the declaration having averred the legal interest in the vessel to be in the plaintiff, it was not competent to him to prove a different interest, *Routh* v. *Thompson*, 11 East, 428 ; *Lucena* v. *Craufurd*, 5 Bos. & Pul. 308 ; *Leland* v. *Loud*, 16 Pick. 223.

*Choate* and *Crowninshield*, for the plaintiff, to the point, that the clause in the policy in regard to the sheathing, was not a warranty, cited *Walden* v. *New York Firem. Ins. Co.* 12 Johns. R. 128 ; *Clapham* v. *Cologan*, 3 Campb. 382 ; and that such clause was at most a representation, but that being inserted in the policy, it was not even a representation, Hughes on Ins. 345 ; that if the vessel was seaworthy when she left New York, the presumption was, that she continued so during the voyage, and the burden of proof was on the defendants to show the contrary, *Paddock* v. *Franklin Ins. Co.* 11 Pick. 237 ; *Taylor* v. *Lowell*, 3 Mass. R. 347 ; as to the objection, that there was no evidence, that the vessel was at or prosecuting her voyage from Calais on the 16th of July, according to the terms of the policy, *Manly* v. *United Mar. and Fire Ins. Co.* 9 Mass. R. 85 ; that the objection as to the preliminary proof, was properly left to the jury on the question whether there was a waiver of such proof, or not, 2 Phillips on Ins. 350 ; *Francis* v. *Ocean Ins. Co.* 6 Cowen, 404 ; *Ocean Ins. Co.* v. *Francis*, 2 Wendell, 64 ; *Vos* v. *Robinson*, 9 Johns. R.

196 ; and to the point, that the plaintiff was so interested in the vessel at the time when the policy was made, and especially at the time when the loss occurred, as to be entitled to recover the whole for his own use, *Carroll* v. *Boston Mar. Ins Co.* 8 Mass. R. 515 ; *Rhind* v. *Wilkinson*, 2 Taunt. 242 *Abitbol* v. *Bristow*, 6 Taunt. 464 ; *De Symonds* v. *Shedden*, 2 Bos. & Pul. 153 ; 2 Phillips on Ins. 378 ; *Gordon* v. *Mass. Fire and Ma . Ins. Co.* 2 Pick. 249 ; *Columbian Ins. Co.* v. *Lawrence*, 2 Peters's Sup. Court R. 46 ; [and see *Rider* v. *Ocean Ins. Co. ante*, 259.]

*une 30th.*     PUTNAM J. delivered the opinion of the Court.   The loss alleged in this case is admitted, or not denied ; and several objections have been made to the payment of it by the defendants, which will now be considered.   No fraud on the part of the plaintiff is suggested ; no concealment is pretended.

It was insisted for the defendants, that there was a warranty that the vessel was sheathed.   The words in the policy which are relied upon are, the " company not liable for any damage to or from her sheathing."   The report thus states this part of the case.   " It being proved that the vessel was not sheathed at the time of the loss, the defendants' counsel objected that the plaintiff had not made out his case in this particular, the plaintiff, at the time of making the insurance, having represented, that she was sheathed, and the description of the vessel in the policy being a warranty, the fulfilment of which was essential to his right to recover, and which he was bound to prove."   The case also finds, that there was no other representation upon this matter, excepting that which has been cited from the policy.

If it is to be considered as a representation, and the defence put on the ground, that it has not been complied with, we think it cannot prevail ; for it is evidently touching a matter not material.   The report states, that there was evidence in the case tending to show, that sheathing is not considered of advantage to a vessel in the coasting trade ; which was the employment in which this vessel was engaged.

And the clause was introduced evidently with another intent than to be a warranty, in the strict meaning of that term

in the law of insurance. It was introduced for the protection of the defendants against the risk of loss for damage which might happen to the sheathing, which, as the report states, one of the directors of the company had examined when the vessel was in Boston, two or three weeks before the insurance, when it was found not to be very good. Now the defendants were unwilling to be subject to any loss on account of that old sheathing. It is not to be considered a warranty, any more than the clause which provides that the underwriters shall not be liable for any loss upon grain, &c., would be a warranty that the cargo consisted wholly or partly of grain, or than a stipulation that the defendants would not be liable for any damage to the stern boat, if suspended from the stern davits, would amount to a warranty to carry a boat astern.

And it was further argued for the defendants, that there was no evidence that the vessel was at or prosecuting her voyage from Calais on July 16th, according to the terms of the policy. We think the decision in *Manly* v. *United Mar. and Fire Ins. Co.* 9 Mass. R. 85, a good answer to this objection. There an insurance was made upon a vessel for one year, commencing the risk at B. on a day certain at noon ; in fact, however, the vessel had left the port of B. the preceding day, but was in good safety at sea on the day fixed, and was afterwards lost within the year ; and the underwriters were held liable. *Sewall* J., who was a very able commercial lawyer, gave the opinion for the Court, and very properly observed, that the policy was made not with any distinct view to place, but merely regarding time. That case affords an illustration of the doctrine of warranty. If the intent of the parties was, that the policy was to attach on condition that the vessel was at B. on the day named, and that the risk should begin there, excluding every other place, then the policy never attached. But the Court held, that the intent was to commence the risk on a day certain, and that the intent to insure at B. was not exclusive of any other place. It is a material fact in that case, and in which it is similar to the case at bar, that when the policy was made, neither party knew when the vessel sailed from the

port named ; and it was the clear intent of the parties to insure on time, without regard to the place where the vessel might then be, but with regard to the employment in which the vessel was engaged, viz., in the coasting trade. This objection, we think, cannot prevail.

It was then objected, that no evidence was offered of any preliminary proof before bringing the action, excepting an abandonment which was not accepted, and a demand of payment of the loss, and a written agreement of reference, and the testimony of one of the plaintiff's witnesses, that the defendants had always resisted the right of recovery, on account of the unseaworthiness of the vessel.

But the report finds that there was no evidence, that the defendants, in their communications with the plaintiff, made the want of proof a ground of their objection to pay the loss claimed. And the court very properly left it to the jury to determine, whether the defendants had not waived their right to any further proof, or whether it was not evidence, that they had such proof. We all think that direction was right, and are satisfied with the result expressed by the opinion of the jury, for the plaintiff, as to that part of the case.

Then it was contended, that the vessel was unseaworthy, in respect that her chain cable was too short. Now the report finds, that in June previous to the date of the policy, the vessel was at Boston, and that she was then equipped with chain cables of sufficient length ; that she sailed from New York for Boston on December 13, and was wrecked on the 15th, and came into Newport on the 24th ; and that soon after her arrival, she had but 49 fathoms of chain cable, which was confessedly insufficient to render her seaworthy, there being no evidence as to the time when the deficiency in the chain happened, although there was evidence tending to show, that there was sufficient when she sailed from New York. The question was, when the deficiency took place. The legal presumption was properly stated to the jury on this point, that if they found the vessel was seaworthy when the policy attached and the risk commenced, she so continued. The part of the cable might have been purloined at Newport. At any rate, there was no evidence introduced by the defendants to rebut the

presumption of the law before stated, as to seaworthiness, or to show that there had been any neglect properly attributable to the plaintiff in that respect.

But the most material objection remains to be considered, viz., whether the plaintiff is entitled to recover for more than one half of the vessel. It is to be recollected, that the defendants caused the plaintiff, for whom it might concern, payable to him, to be insured the sum contained in the policy. Now it is contended, that the title to one half of the vessel was in one Lamson, when the policy was made, and that he sold out his half before the loss, and so had no interest at the time of the loss ; and so, by the adjudication in *Carroll v. Boston Mar Ins. Co.* 8 Mass. R. 515, Lamson could not recover, nor could the plaintiff recover for the use of Lamson, or of his assignee, who became such without the assent of the defendants.

The plaintiff has proved the loss, and he now claims to recover in his own name, for account of whomsoever the loss concerned. The money, by the terms of the policy, was to be paid to him. But it was to be paid only to those who were interested at the time of the loss ; for they only, in legal contemplation, were to be considered as concerned. The plaintiff insists, that he was so interested in the whole concern at the time when the policy was effected, and especially at the time when the loss happened, as to be entitled to recover the whole for his own use.

The report finds, that the plaintiff and Lamson bought the vessel together, and that the policy was made payable to the plaintiff, because Lamson had paid nothing for the vessel, and the plaintiff had indorsed Lamson's notes given for his moiety. And this statement was made to the president and secretary of the insurance company. And the plaintiff paid the whole of the premium. The plaintiff therefore had an interest when the policy was made, that the loss, if any should happen, should be paid to him, to enable him to get an indemnity against the liability he had assumed as indorser for Lamson for his half of the vessel. But there was no writing at tha time between the plaintiff and Lamson in the nature of a mortgage, or otherwise. But after a few months, and before the

loss, viz., in October following the July when the policy was made, Lamson, like an honest man, gave a bill of sale to the plaintiff of his moiety, and he afterwards deceased. The plaintiff then became directly interested in the whole vessel, and continued to be and was interested in the whole at the time of the loss. The case does not resemble *Carroll* v. *Boston Mar. Ins. Co.*, which was relied upon by the defendants, upon this point; for there the assignment was to a stranger to the party named in the policy, here not.

If no assignment had been made by Lamson, there could be no doubt but that the plaintiff might have recovered the whole, and would be accountable to Lamson for the half; and he would, without doubt, have been thereby released from his liability as indorser. The intent of Lamson was to give the plaintiff an actual title, and not a mere contingent equitable interest. And can it be maintained, that the assignment shall be considered as operating so as to destroy the right which he before had to receive the whole money in case of loss? We think not.

In *Rhind* v. *Wilkinson*, 2 Taunt. 242, it was considered that an averment of interest at the time of effecting the policy, is immaterial. The court held, that if the declaration had averred, that the plaintiff was interested at the time of the ship's sailing, or that the policy was made on a certain day, and that afterwards, on a subsequent day, the plaintiff acquired an interest, it would be sufficient. The material allegation is, that the party assured had a legal interest at the time of the loss.

We are satisfied that the plaintiff had such interest, in the case at bar, and that none of the objections which have been raised, can prevail against the plaintiff's legal claim to recover.

The plaintiff, in the agreement to refer, has waived his abandonment, and claim for a total loss, and the case must be submitted to an assessor to assess the damages as upon a partial loss.